IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DARLENE MARROW, ) | |
| Plaintiff, ) | |
| v. ) | CIVIL NO. 3:09CV340 |
| MICHAEL J. ASTRUE, ) Commissioner of Social Security, ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Darlene Marrow, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 13) and motion to remand (docket no. 14) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 16) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on August 22, 2006, claiming disability due to carpal tunnel in her left wrist, nerve damage in her left elbow, and neuroma on her right foot, with an alleged onset date of October 1, 2003. (R. at 103-16; 153.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 61-66; 73-76.) On March 18, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 27-44.) On April 9, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where Plaintiff retained the residual functional capacity to perform her past relevant work as a maid, packer, and caser. (R. at 11-19.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were

applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of hypokalemia, Morton's neuroma of the right foot[6], fibromyalgia, hypertenstion, degenerative disc disease of the lumbar spine, degenerative changes of the cervical spine, left carpal tunnel syndrome, and left ulnar neuropathy; but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 14-15.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that she is limited in pushing and pulling, as well as reaching overhead with her right upper extremity. (R. at 15-18.) Additionally, the ALJ found that Plaintiff is able to perform gross and fine manipulation with her hands. (R. at 15-18.) Finally, the ALJ noted that Plaintiff may occasionally use ramps and climb stairs, but that she should never climb ladders, ropes, or scaffolds. (R. at 15-18.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as a maid, packer, and caser, because such work does not require activities precluded by Plaintiff's RFC. (R. at 18-19.) Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step

---

[6] A neuroma is a tumor growing from a nerve or made up largely of nerve cells and nerve fibers. Dorland's Illustrated Medical Dictionary 1285 (31st ed. 2007). Morton's neuroma results from Morton's neuralgia, which is a form of foot pain caused by compression of a branch of the plantar nerve by the metatarsal heads. Id. at 1281.

6

five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 19.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that the ALJ: (1) irrationally and erroneously dismissed Plaintiff's complaints of pain and limitations as only partially credible; (2) failed to consider all of Plaintiff's limitations in eliciting the VE's opinion as to her employability; and (3) erroneously found that Plaintiff was capable of performing her past relevant work as a packer or motel maid. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 19-31.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standards such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 12-19.)

### A. The ALJ properly evaluated Plaintiff's complaints of pain and limitations as only partially credible.

Plaintiff argues that the ALJ impermissibly relied on only a small portion of the record, instead of evaluating the evidence as a whole. (Pl.'s Mem. at 20.) Plaintiff also argues that the record corroborates her assertions of pain and limitations. (Pl.'s Mem. at 21.) Further, Plaintiff

contends that the ALJ improperly considered her application for licensure of a day care, because the record was dated two months before her alleged onset of disability; and as such, was irrelevant. (Pl.'s Mem. at 22.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Here, the ALJ determined that there were underlying medically determinable physical impairments that reasonably could produce Plaintiff's pain or other related symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (R. at 16.) The ALJ noted that in 2004 Plaintiff had been asked to wear a shoe support for her right foot pain, but that she did not wear one. (R. at 17, 318.) The ALJ also noted that Plaintiff did not complain of foot pain again until September of 2006; that she did not use crutches or any

other assistive device; that she reported only occasional pain; and that she had full range of motion of her toes. (R. at 17, 183, 318, 387-99.) The ALJ also noted that while Plaintiff testified that her right hand was no better after her carpal tunnel surgery in 1991, there is no evidence that she sought further treatment for complaints of right hand symptoms. (R. at 17, 31-32.) With regard to her left hand symptoms, the ALJ noted that Plaintiff did not follow through with her scheduled carpal tunnel surgery; a 2006 examination indicated that her examination was less impressive for carpal cubital tunnel than previously reported; and that there was no record Plaintiff sought any other treatment for her ulnar or median neuropathy. (R. at 17, 368, 392.) The ALJ further noted that Plaintiff alleged a heart murmur and shortness of breath, but repeated examinations reflected no problem with her lungs or heart. (R. at 17, 33, 209, 231, 235, 275, 319, 322, 353, 355, 357, 373, 376, 401, 420, 422, 424, 429, 431, 433, 447-48.) The ALJ also noted that Plaintiff was only taking "over-the-counter" pain medication for her foot pain in October 2006, and that she was not taking any heart or breathing medication, or narcotic pain medication. (R. at 17, 387-99.) With regards to Plaintiff's alleged back pain, the ALJ noted that lumbar spine x-rays showed no compression of the nerve roots. (R. at 16, 214.) Further, Plaintiff had full range of motion of the right shoulder in an August 2006 examination. (R. at 357.) In December 2006, Plaintiff had some restricted motion of her back, but in March 2007, her back was normal. (R. at 401, 434.) Further, Plaintiff's recent physical examinations showed no neck, back, or chest tenderness. (R. at 420-38.) The ALJ concluded that Plaintiff's treatment was sporadic; that she did not always follow through with treatment recommendations; and that Plaintiff's symptoms have "waxed and waned," but generally improved with treatment after a short period of time. (R. at 17-18.)

Moreover, the ALJ noted that Plaintiff's daily activities were inconsistent with her claims of unrelenting pain. (R. at 17.) Specifically, Plaintiff was able to take care of her grandchild; feed and water the pets; perform household chores at her own pace and with her husband's help; cook and clean; and read, socialize and watch television. (R. at 173-74, 176-77.) The ALJ also noted that Plaintiff applied for licensure of a day care center in August 2003, and in May 2005 she reported to her doctor that she was babysitting for a living. (R. at 18, 237, 384.) The ALJ concluded that, in viewing the record as a whole, the evidence did show severe impairments which would cause some discomfort, but not to the extent that Plaintiff alleged or that would prevent all work activity on a sustained basis. (R. at 18.)

The above facts provide substantial evidence to support the ALJ's decision to find that Plaintiff's complaints of pain and limitations were only partially credible. The ALJ did not, as Plaintiff contends, impermissibly rely on only a few statements in record. Plaintiff seems to argue that the fact that she needs help completing chores, and performs them at a reduced pace, supports her assertion that her pain and limitations are disabling. (Pl.'s Mem. at 21.) However, the ALJ considered those factors in his decision, when he recognized that Plaintiff could do a number of household chores, "albeit at her own pace and with her husband's help." (R. at 17.) Also, this determination was not the only reason that the ALJ concluded that Plaintiff's assertions were only partially credible; it was merely one factor of many. Plaintiff also seems to argue that her inability to understand what she reads and watches on television is indicative of her disability. (Pl.'s Mem. at 22.) However, Plaintiff never alleged that she was disabled due to diminished comprehension; and, furthermore, the record does not support such a finding. Plaintiff further argues that the ALJ improperly considered evidence of her application for

licensure of a daycare center, because that evidence predated her onset of disability by two months. (Pl.'s Mem. at 22.) While Plaintiff is correct that this evidence is irrelevant to the time period of her current claim, the ALJ did not afford this evidence undue weight, nor was it the only factor that the ALJ relied on in making a determination of Plaintiff's credibility. The ALJ merely mentioned that Plaintiff's credibility was <u>further</u> questionable because of this evidence, as well as the evidence of Plaintiff's statement to her physician in May 2005 that she babysat for a living. (R. at 18, 384.) The ALJ's conclusion that Plaintiff's credibility was questionable was reasonable, based on other findings of fact, and supported by the above evidence. As such, the ALJ properly evaluated Plaintiff's complaints of pain and limitations, and his finding that Plaintiff was only partially credible is supported by substantial evidence and application of the correct legal standards.

> B. **The ALJ considered all of Plaintiff's limitations in the hypothetical posed to the VE.**

Plaintiff argues that the ALJ erred in failing to include reaching limitations due to Plaintiff's neck injury in the hypothetical posed to the VE. (Pl.'s Mem. at 23.) Specifically, Plaintiff argues that she was not only limited in reaching overhead, but she was also limited in general reaching movements. (Pl.'s Mem. at 23.) Plaintiff also argues that although the ALJ included upper extremity pushing and pulling limitations in Plaintiff's RFC in his written opinion, he failed to include such limitations in the hypothetical posed to the VE. (Pl.'s Mem. at 27.) Specifically, Plaintiff contends that she has significant pain and limitations in her arms caused by her neck injury. (Pl.'s Mem. at 28.) Plaintiff argues that had the ALJ included these limitations in the hypothetical posed to the VE, no rational person would have found that Plaintiff could perform her past relevant work. (Pl.'s Mem. at 29.)

At the fourth step of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The analysis requires that the ALJ evaluate all of the factors that contribute to the claimant's RFC, as well as the "physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1520(f). In making the determination, the ALJ is permitted to utilize vocational experts, vocational specialists, or other resources to determine whether a claimant can perform his/her past relevant work. 20 C.F.R § 404.1560(b)(2). When utilizing a VE in this capacity, the VE "may offer expert opinion in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work." Id. A hypothetical question must accurately represent the claimant's RFC based on all evidence of record and a fair description of all the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1February 11, 2010989).

Here, the ALJ posed a proper hypothetical to the VE that accurately represented Plaintiff's RFC based on all evidence of record and a fair description of her impairments. The ALJ found that Plaintiff had the RFC to perform light work, "except that she is limited in pushing and pulling, as well as reaching overhead with her right upper extremity." (R. at 15.) The ALJ also found that Plaintiff could perform gross and fine manipulation with her hands. (R. at 15.)

Plaintiff misinterprets the reaching limitations included in the ALJ's assessment of her RFC. Plaintiff contends that she was limited in reaching in all directions, and seems to allege that the ALJ concluded the same in his opinion. (Pl.'s Mem. at 23.) However, Defendant

13

interprets the ALJ's assessment of Plaintiff's RFC to mean that Plaintiff was limited in pushing, pulling, and reaching overhead with her right upper extremity, not that she was limited in reaching in all directions. (Def.'s Mem. at 17.) The Court finds that Defendant's interpretation of the ALJ's assessment is proper here. There is substantial evidence supporting this finding. First, Plaintiff herself reported in October 2006 that she was only able to raise her right arm to shoulder level, but that she could not lift her left arm overhead. (R. at 183.) Also, as stated above, Plaintiff had full range of motion of the right shoulder in an August 2006 examination. (R. at 357.) Finally, although Plaintiff contends that state agency physician Dr. Solomon opined that Plaintiff was "limited in reaching in all directions," Dr. Solomon's opinion actually was that Plaintiff was "only limited in reaching overhead." (Pl.'s Mem. at 26, R. at 442.) Therefore, a finding that the ALJ limited Plaintiff's pushing, pulling, and overhead reaching abilities to her right upper extremity, as opposed to general reaching limitations in all directions, is proper. Plaintiff's argument that the "medical records evidence consistent complaints by [Plaintiff]" is weak at best, as the ALJ properly found that Plaintiff's complaints of symptoms and limitations were only partially credible. (Pl.'s Mem. at 26.) Also, as noted earlier, the ALJ did not dispute that Plaintiff had severe impairments that caused her discomfort; he only disputed the extent of discomfort that Plaintiff alleged and that her symptoms would prevent all work activity on a sustained basis. (R. at 18.) Accordingly, the ALJ did not include a limitation on general reaching in Plaintiff's RFC because he did not find such a limitation.

Plaintiff further argues that although the ALJ included upper extremity pushing and pulling limitations in Plaintiff's RFC in his written opinion, he failed to include such limitations in the hypothetical posed to the VE. (Pl.'s Mem. at 27.) Plaintiff again seems to argue that she

14

had upper extremity (both right and left) pushing and pulling restrictions; but, as already noted, it is reasonable to conclude that the ALJ limited those restrictions to Plaintiff's right arm only, not also her left arm. (Pl.'s Mem. at 27-29, R. at 15.) Plaintiff's attorney had the opportunity to question the VE during the administrative hearing, but failed to include such a consideration. (R. at 40-44.) The Fourth Circuit has reasoned that "although it might have been prudent for the ALJ to pose the questions himself, any possible defect was cured by the attorney's questions." Shively, 739 F.2d 987, 990-991 (4th Cir. 1984). It is, therefore, fair to assert that if counsel is given the opportunity to include such a consideration in a hypothetical to be posed to a VE, and fails to do so, one cannot be heard to complain later; especially if, as here, at least some of the factors were fairly encompassed within what was posited to the VE. Here, the ALJ included Plaintiff's overhead reaching limitation in the hypothetical posed to the VE, noting that the hypothetical person was "limited on reaching, has difficulty raising right arm fully overhead but can get up to shoulder level and can raise her left hand overhead, so she'd be precluded from working overhead." (R. at 42.) One can even argue that the ALJ's description of what Plaintiff could do with her right and left arms adequately addressed Plaintiff's pushing and pulling limitations. Furthermore, the ALJ's decision regarding Plaintiff's limitations is supported by substantial evidence, and such limitations were fairly encompassed in the hypothetical posed to the VE.

### C. The ALJ properly found that Plaintiff was capable of performing her past relevant work as a packer, caser, or maid.

Plaintiff argues that it was irrational and reversible error for the ALJ to find that she was capable of performing her past relevant work as a packer or motel maid because it was "uncontroverted" in the record that those jobs required her to stand and walk more than eight

hours a day, and the ALJ had limited her to standing and walking only six hours a day. (Pl.'s Mem. at 30.) Specifically, Plaintiff relies on a questionnaire she filled out regarding her previous employment, in which she stated that her previous employment (Russell Stover) required her to stand seven hours a day, and another job (Sherwood Food) required her to stand nine hours out of the workday. (Pl.'s Mem. at 30-31, R. at 167-68.)

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). The burden is still on Plaintiff at step four to prove that she is unable to perform her past relevant work. Plaintiff must "show an inability to return to her previous work (*i.e.,* occupation), and not simply to her specific prior job." DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).). Further, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles (DOT) as presumptively descriptive of a claimant's prior work. Id.

Here, the ALJ found that Plaintiff was capable of performing her past relevant work as a maid, packer, and caser, as those jobs are actually and generally performed. (R. at 18.) The ALJ noted that the VE considered Plaintiff's RFC, which included exertional and nonexertional limitations, and that the VE testified that Plaintiff's impairments would not preclude her from performing her past relevant work. (R. at 18-19.) The ALJ also noted that the VE's testimony was not inconsistent with the DOT. (R. at 19, 43.) The ALJ included in the hypothetical posed to the VE that Plaintiff could only stand or walk about six hours in an eight hour day, and the VE still concluded that Plaintiff would be able to perform her past relevant work which he found to

be "light" in exertional level. (R. at 41-42.) A limitation to standing or walking six hours in an eight hour day is consistent with a finding of light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). Furthermore, SSR 83-10 states that a "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." As stated earlier, the ALJ found that Plaintiff was able to perform her past relevant work as actually and generally performed, not as she performed it in her particular job. (R. at 18.) Furthermore, in the questionnaire that Plaintiff filled out regarding her previous employment, which Plaintiff relies on to substantiate her arguments, she stated that she was "just guessing" and "really [didn't] remember" how many total hours each day she walked or stood. (R. at 167-68.) Therefore, the ALJ's finding that Plaintiff could perform her past relevant work as a maid, packer, or caser as actually and generally performed is supported by substantial evidence and application of the correct legal standards.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 13) and motion to remand (docket no. 14) be DENIED; that Defendant's motion for summary judgment (docket no. 16) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Richard L. Williams and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within**

17

**fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                               /s/
                                          DENNIS W. DOHNAL
                                          UNITED STATES MAGISTRATE JUDGE

Date: February 22, 2010
Richmond, Virginia